AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the
Western District of New York

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.  18-mj-1178 |
| 1707 Ferry Avenue, Niagara Falls, New York 14301; | ) | |
| single family residence, beige in color with the numbers | ) | |
| "1707" affixed to the left front pillar of the residence | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A, attached hereto and incorporated herein by reference.

located in the _____ Western _____ District of _____ New York _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, Sections 371 & 922(a)(6) | Conspiracy to Commit an Offense & Making a False Statement During the Purchase of Firearms |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT, attached hereto and incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

PAUL BROSTKO, Special ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  10/19/18

_____
*Judge's signature*

City and state:  Buffalo, NY

HON. JEREMIAH J. McCARTHY, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Paul E. Brostko, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, depose and state as follows:

### INTRODUCTION

1.      I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so since 2007.  I am currently assigned to the Buffalo, New York, Field Office.

3.      I have participated in numerous investigations focusing on firearms trafficking, gangs, and distribution of illegal narcotics.  I have conducted covert surveillance of suspected traffickers, interviewed numerous individuals involved in gangs and illegal firearm and/or narcotic trafficking trade, been a member of surveillance teams, participated in the execution of numerous state and federal search and arrest warrants involving firearm and/or illegal narcotic traffickers and violent offenders, and participated in the seizure of numerous firearms and controlled dangerous substances.  Through my training, education and experience, I have become familiar with the manner in which firearms intended for criminal use are transported, stored, and resold, similar to the transportation, storage and distribution of illegal narcotics.

I am also familiar with the methods of payment for such unlawful transfer of firearms and the distribution and the manner in which firearm and/or narcotic traffickers communicate with each other.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, police officers, witnesses, telephone records, and reports. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      I have not included all of the information relevant to the investigation in this affidavit, but I do not believe that I have omitted any information that would have a tendency to defeat a showing of probable cause. To the best of my knowledge and belief, all statements made in this affidavit are true and correct.

## PURPOSE OF THE AFFIDAVIT

6.      I submit this affidavit in support of an application for a warrant to search at the residence of 1707 Ferry Avenue, Niagara Falls, New York 14301 and all out buildings located on the same property (hereinafter "**TARGET PREMISES**") as further described in Attachment A, and to seize the items described with particularity in Attachment B.

7.      Based on the facts set forth in this affidavit, there is probable cause to believe that Jeremy L. HEARN (hereinafter "HEARN"), Jerome I. WATKINS, JR. (hereinafter "J. WATKINS"), Marcedes L. GREEN (hereinafter "GREEN"), Kristina E. DELORENZO (hereinafter "DELORENZO"), Marquise WATKINS (hereinafter "M. WATKINS"),

2

Rashaun WATKINS (hereinafter "R. WATKINS"), and others have committed violations of Title 18, United States Code, Section 922(a)(6), that is, knowingly making any false or fictitious oral or written statement to a firearms dealer with respect to any fact material to the lawfulness of the acquisition or disposition of firearms and ammunition, as well as Title 18, United States Code, Section 371, that is two or more persons conspiring to commit any offense against the United States, and that execution of the search warrant will lead to evidence of these crimes.

8.      I submit that, pursuant to the facts set forth in this affidavit, there is probable cause to believe that the lawful execution of the search warrant sought herein will lead to additional evidence that HEARN, J. WATKINS, GREEN, DELORENZO, M. WATKINS, R. WATKINS, and other individuals unknown are engaged in such crimes. The execution of a search warrant at the **TARGET PREMISES** will aid in developing further evidence of the conspirators' firearm trafficking activities, including further establishing a pattern of HEARN, J. WATKINS, GREEN, DELORENZO, M. WATKINS, R. WATKINS, and others in their firearm trafficking activities, determining meeting locations, and identifying customers and other members of the firearm distribution conspiracy, including their residence(s) and/or stash-house(s).

## FACTS ESTABLISHING PROBABLE CAUSE
## TO SEARCH THE TARGET PREMISES

9.      Since April of 2018, ATF has conducted an ongoing investigation into a cross-border firearms-trafficking scheme involving HEARN, J. WATKINS, DELORENZO, and GREEN. To that end, on August 30, 2018, HEARN, J. WATKINS, DELORENZO, and

3

GREEN were indicted for their roles in the firearms-trafficking scheme that to date has involved the illegal purchase and transfer of 38 firearms. *See* SDOH Case No. 2:18-cr-182. The following is a summary of the investigation to date, as well as new information that bears on this affidavit and application.

### A. Background Regarding the Firearms-Trafficking Scheme: HEARN, J. WATKINS, GREEN, and DELORENZO Are Investigated for Illegal Firearms Trafficking.

10.     In April of 2018, ATF identified firearm trace number T20180120410, which had a documented 58-day time-to-crime, with a recovery location in Ottawa, Ontario, Canada. The phrase "time-to-crime" refers to the period between the last documented retail transaction and the date it is recovered by law enforcement. According to the firearm trace, Jeremy L. HEARN was listed as the original purchaser of the recovered firearm. HEARN purchased the firearm on or about February 1, 2018, from Cap City Outfitters LLC, a Federal Firearm Licensee (hereinafter "FFL") located at 4465 Cemetery Road, Hilliard, Ohio 43026. Your affiant knows from training and experience that a 58-day time-to-crime is a short amount of time and is an indicator of firearm trafficking. Most individuals who purchase firearms retain them for extended periods up to years in length. Therefore, whenever a firearm is recovered in a criminal offense shortly after it was purchased it is highly likely that the firearm was diverted to the criminal possession in some sort of firearm trafficking scheme. Your affiant also knows from training and experience that the shorter the time-to-crime for the firearm recovery the more likely it is that the original purchaser, in this case HEARN, has a more direct involvement in the firearm trafficking scheme.

11.     Continuing in April of 2018, ATF Special Agent (SA) Teresa Petit conducted multiple queries of an ATF database and other resources available and identified that HEARN has purchased a minimum of thirty-eight (38) firearms between the dates of January 19, 2018, and April 26, 2018.  HEARN has acquired the known firearms from various FFLs through multiple sale transactions occurring on various dates.  A "multiple sale" transaction is defined as when an individual purchases two (2) or more handguns from the same FFL within a five (5) business day timeframe.  The FFL is required to report the "multiple sale" to ATF.  Specifically, HEARN purchased the known firearms in twelve (12) separate retail firearm transactions. HEARN has purchased multiple firearms of the same make, model, and caliber.  Your affiant knows from training and experience that the rate at which HEARN has acquired the firearms and the repeated nature of the type of firearms acquired is indicative of an individual who is acquiring firearms for others for the purpose of resale and diversion into criminal possession.

12.     On April 25, 2018, ATF SA Petit spoke with the co-owner/operator of a central Ohio FFL who stated that HEARN and another individual were in the retail store on April 22, 2018.  ATF obtained video surveillance of HEARN with the unknown individual in the FFL on April 22, 2018.  The unknown individual is suspected to be J. WATKINS based on comparison pictures between the video surveillance and photographs available via social media.  Your affiant knows from training and experience that often individuals involved in firearm trafficking schemes will accompany the original purchaser of the firearms to the FFL to pick out the types of firearms to purchase.  Moreover, HEARN and J. WATKINS arrived together at the FFL location together in a 2017 black Nissan Altima with Virginia license

plate number VWE4475. Based upon further investigation conducted by ATF SA Petit, this black Nissan Altima was discovered to belong to Hertz Rental Car and was rented by J. WATKINS. J. WATKINS rented the vehicle on or about April 21, 2018, in New York and was to return it on April 28, 2018, to a location identified as NIA, NY (believed to represent Niagara Falls, New York). While present at the central Ohio FFL on April 22, 2018, HEARN completed paperwork to purchase three (3) firearms; however, the co-owner/operator did not complete the transaction, informed HEARN that there was a delay, and told HEARN that he would follow up with HEARN to complete the purchase on a later date. HEARN provided that central Ohio FFL with the contact telephone number of (614) 632-2084. HEARN returned to the black Nissan Altima and left the area.

13.     The co-owner/operator further stated that, on April 22, 2018, he recognized HEARN from an attempted purchase on March 3, 2018. On that date, HEARN was in the store with a female identified as GREEN. Both HEARN and GREEN completed paperwork to purchase firearms on March 3, 2018; however the co-owner/operator delayed their purchase. ATF SA Petit identified that GREEN has purchased six (6) firearms in two separate multiple sale transactions. Both dates that GREEN purchased firearms, HEARN also had a multiple sale transactions on the same date at the same FFL. Through further investigation, ATF SA Petit learned that HEARN provided the money to GREEN to purchase the firearms.

14.     GREEN was arrested on March 29, 2018, by the Ohio State Highway Patrol ("OSP") and charged with multiple traffic violations. According to OSP, GREEN was operating a vehicle that had a current Ohio registration returning to HEARN. The vehicle

registration displayed a purchase date of March 16, 2018, and listed HEARN as the registered owner corresponding to an address ATF SA Petit, through the investigation, knows to be HEARN's. Additionally, GREEN was arrested and a bond was required for her release. According to records available from the Franklin County Municipal Court, HEARN posted the bond.

15.     On April 26, 2018, ATF SA Petit was notified that two (2) additional firearms purchased by HEARN had been recovered. As to one, the ATF Trace information indicated that a firearm purchased by HEARN on January 22, 2018, at Build A Gun, an FFL located at 2700 Billingsley Road, Columbus, Ohio 43235, was recovered in Ottawa, Ontario, Canada on April 13, 2018 (T20180138490). This firearm recovery calculated to an eighty-one (81) day time-to-crime. Similar to the explanation above from paragraph 11, your affiant knows from training and experience that an eight-one day time-to-crime period is a short amount of time and is an indicator of firearm trafficking. Regarding the other firearm recovered in Ottawa, Ontario, Canada on April 13, 2018, HEARN purchased that firearm on March 4, 2018, (T20180137995) from The Bullet Ranch LLC, an FFL located at 12425 Broad Street SW, Pataskala, Ohio 43062. The time-to-crime recovery was forty (40) days. Again, your affiant knows from training and experience that a forty day time-to-crime period is a short amount of time and is an indicator of firearms trafficking. Also noteworthy, while these two firearms were both recovered on the same date in Ottawa, Ontario, Canada, the recovery locations and possessors were not the same, which your affiant knows from training and experience to be indicative of firearms trafficking. On March 4, 2018, when HEARN purchased the aforementioned firearms that have since been recovered in Ottawa, Ontario, Canada, GREEN also completed one of her two multiple sale transactions on the same date

7

at the same FFL. On April 27, 2018, ATF SA Petit was notified that an additional firearm trace was completed for a firearm that HEARN purchased on February 5, 2018, calculating to a seventeen (17) day time-to-crime (T20180139173), which your affiant knows is also indicative of firearms trafficking.

16.    Pursuant to federal law and regulation, the FFL is required to obtain a completed ATF Form 4473 (the "Firearms Transaction Record") from the actual purchaser of a firearm before the FFL can transfer or sell a firearm to any unlicensed person. 18 U.S.C. § 923(g); 27 C.F.R. § 478.124. ATF Form 4473 gathers a host of information about the purchaser, including information to determine if the purchaser may lawfully possess a firearm.    FFLs also may not transfer a firearm to an unlicensed person without first conducting a background check through the National Instant Check System ("NICS"), and recording the information on the ATF Form 4473. 18 U.S.C. § 922(t); 27 C.F.R. § 478.102. The NICS process is run by the Federal Bureau of Investigation ("FBI") and provides the mechanism through which FFLs determine whether a particular purchaser is prohibited from possessing firearms. Providing false or misleading information to an FFL in connection with the acquisition of a firearm, e.g., lying on the ATF 4473, is a violation of federal law. 18 U.S.C. § 922(a)(6). HEARN indicated on the ATF 4473 forms that he was the "actual buyer" of the firearm in question when, in truth in fact, he was nothing more than a straw purchaser. More specifically, a "straw" purchase is described as the acquisition of a firearm(s) from a dealer by an individual (the "straw"), done for the purpose of concealing the identity of the true intended receiver of the firearm(s). Additional information required on the ATF 4473 requires the purchaser's state of residency and address. Between the dates of January

19, 2018, and April 26, 2018, HEARN provided on the ATF 4473 that his residence is located at 903 Carolyn Avenue, Columbus, Ohio 43224. HEARN used this same address on the ATF 4473 he submitted for every firearm transaction where he was the purchaser. On April 24, 2018, your affiant conducted surveillance at the residence at 903 Carolyn Avenue, Columbus, Ohio 43224, and observed a silver BMW registered to HEARN parked on the street in front of the location.

17.     ATF obtained record that HEARN was documented by the U.S. Customs and Border Protection Agency returning via way of the "Rainbow Bridge" from Canada into Niagara Falls, New York, on November 26, 2017. During the vehicle encounter HEARN was operating his silver BMW and J. WATKINS was a passenger. J. WATKINS is a resident of Niagara Falls, New York. In addition, J. WATKINS has been documented returning to the United States via way of the Rainbow Bridge four (4) times between January 8, 2018, and March 14, 2018.

18.     Regarding the surveillance video from the FFL on April 22, 2018, which ATF obtained of HEARN with the individual then suspected (and now known) to be J. WATKINS: further review of the video also shows that there is a third person waiting in the vehicle outside the FFL that appears to be a female with white or otherwise light complexion. Your affiant knows from training and experience that often individuals involved in firearm trafficking schemes will accompany the original purchaser of the firearms to the FFL to pick out the types of firearms to be purchased. Moreover, based upon training and experience, J. WATKINS' recent documented residency in Niagara Falls, New York, indicates likely ties to the Niagara Falls area, and in turn possible association to other unknown individuals

9

located in Niagara Falls, New York, and its surrounding areas, who might receive the diverted firearms and/or participate in the firearms trafficking scheme. Ohio is known to be a source state for firearm traffickers to commonly divert firearms to other market areas to include New York and Canada, given that Ohio has fewer state-level laws and regulations regarding the purchase of firearms.

19.     ATF SA Petit received information that HEARN returned to the central Ohio FFL on April 26, 2018, to inquire about the transaction he initiated on April 22, 2018. Again, the co-owner/operator of the central Ohio FFL informed HEARN that he was not cleared to transfer the firearms to HEARN at that time but left the transaction open for a later date. Both HEARN's silver BMW and the black Nissan Altima with Virginia license plate number VWE445 rented by J. WATKINS were captured on the FFL's video surveillance system entering the parking lot of the location together on April 26, 2018. Based on the FFL's video surveillance system, HEARN made contact with the occupants of the black Nissan Altima; however, no one from that vehicle entered the store with HEARN.

20.     During conversation with the co-owner/operator of the FFL, HEARN indicated that he hoped to have his firearms in hand by April 27, 2018, as he was planning to leave town on that date. ATF SA Petit knows from review of HEARN's purchasing history he has conducted the twelve (12) multiple sale transactions at twelve (12) different FFLs all since January 19, 2018. On April 26, 2017, due in part that HEARN, J. WATKINS, GREEN, DELORENZO, and others are suspected of trafficking firearms from the state of Ohio, ATF obtained an exigent ping on telephone number (614) 632-2084, which is associated with HEARN. An exigent ping provides law enforcement with immediate global

positioning location(s) for the device and 48 hours' worth of toll records.  From review of the data obtained from the exigent ping, your affiant identified two (2) telephone numbers that belong to other FFLs in the Columbus, Ohio area, one of which was the Cabela's FFL located at 1650 Gemini Place, Columbus, Ohio 43240.  ATF SA Petit contacted the Cabela's FFL to inquire if HEARN had conducted a firearm purchase.  ATF SA Petit learned that HEARN did in fact make a firearm purchase for two (2) firearms on April 26, 2018.

**B. A Car Driven by J. WATKINS and DELORENZO Is Stopped Leaving Ohio.**

21.     Continuing the review of the information obtained from the exigent ping request, your affiant identified the telephone number of (716) 478-2900.  The area code 716 is associated to New York.  On April 26, 2018, HEARN made multiple contact calls with this identified telephone number, including contact with the 716 number in between contact with the phone number associated with the Cabela's FFL.  Your affiant knows from training and experience that individuals will communicate through use of telephones to coordinate acts of their illegal firearm trafficking scheme, and that the above call patterns are indicative of activity associated with firearms trafficking.

22.     SA Petit then sought and obtained an exigent ping regarding the number of (716) 478-2900.  That number was later identified to be associated to J. WATKINS.  Records obtained from that ping displayed that J. WATKINS was located in the area of Niagara Falls, New York, on the morning of April 26, 2018.  Through investigation, and J. WATKINS' statements to OSP, ATF SA Petit knows that J. WATKINS and his girlfriend (DELORENZO) were making an approximate 700-mile, 11-hour round trip to Columbus,

Ohio, which, according to the statements of J. WATKINS and DELORENZO at the time, they made just to go shopping. ATF SA Petit knows this is not a plausible explanation for the travel having driven past numerous other shopping venues. Moreover, on April 27, 2018, ATF SA Petit learned through investigation that J. WATKINS received approximately six (6) firearms while he was in Ohio.

23.     ATF SA Petit knows that the telephone number identified with the 716 area code, now known to be J. WATKINS, was most likely associated to an individual involved in the illegal firearm trafficking scheme. HEARN contacted this number multiple times close in time to the contacts he made with the identified FFL phone numbers. When the first GPS location was received regarding J. WATKINS' number, the location data placed the device outside of Youngstown, Ohio. Working with OSP, your affiant requested a BOLO (be on the lookout alert) for the black Nissan Altima with Virginia license plate number VWE4474 in the area of the GPS data. OSP Troopers assisted in the multi-county search for the vehicle in the area of the received GPS data. The black Nissan Altima was located outside of Ashtabula, Ohio. OSP Troopers conducted a probable cause traffic stop on the vehicle. J. WATKINS was identified as the driver of the vehicle and consented to a further search of the vehicle. In the front passenger seat was DELORENZO. The troopers noted that there was a sales receipt from Vance Outdoors, an FFL located on Cleveland Avenue in Columbus, Ohio. The sales receipt documented a serial number for a High Point manufactured firearm, with serial number XR7250007.

24.     During the traffic stop, J. WATKINS told the Troopers that he and his girlfriend (DELORENZO) (co-passenger) had traveled from New York to shop in Columbus,

Ohio, for the day. J. WATKINS was placed in the rear of a marked OSP patrol car for safety and security during the search of the vehicle. DELORENZO was placed in a separate OSP patrol car. OSP informed ATF SA Petit that the in-car camera recorded J. WATKINS' behaviors while watching the Troopers search the vehicle. His actions were described as nervous and audibly making comment alluding to concern as Troopers searched areas of the vehicle. The Trooper, who has experience in interdiction stops, described this behavior as an indicator that there may be contraband of some type concealed in the vehicle. The vehicle was impounded for further investigation.

25.     J. WATKINS has multiple documented crossings out of the United States and into Canada that align closely in time to HEARN's firearm purchases, and also correspond close in time to the time-to-crime calculations on four firearms. Your affiant knows through training, experience, and conversation with other trained investigators that individuals smuggling goods from the United States will conceal contraband in hidden compartments, behind seat and door panels, and in other void areas in a vehicle to deceive detection. The modes/mechanisms of concealment may vary greatly depending on the type of contraband that is being smuggled. Often these voids take specialized tools and expertise to disassemble or gain access to the concealed item(s). Additionally, depending on the complexity of the concealment technique it may take an extended period to recover the concealed item(s).

### C. Law Enforcement Obtains a Warrant for the Nissan Altima that was Stopped; 7 Guns Are Seized from the Vehicle.

26.     On April 27, 2018, ATF SA Petit received a Federal search warrant from the Northern District of Ohio for the black Nissan Altima that was operated by J. WATKINS

with DELORENZO.  The search of the vehicle yielded the recovery of seven (7) firearms. The firearms were concealed between the foam and seat frame of both front seats. Specifically, four (4) firearms were located under the seat where DELORENZO was seated and three (3) were located under J. WATKINS' seat.  One (1) of the firearms recovered from J. WATKINS' seat was loaded with eight (8) rounds of ammunition.  ATF SA Petit compared the serial numbers of the recovered firearms to the known firearms purchased by HEARN on April 26, 2018, and the recovery accounted for all six (6) firearms.  Based on the above, HEARN purchased the six (6) firearms in Columbus, Ohio, and on the same date transferred the firearms to J. WATKINS and DELORENZO who were returning to Niagara Falls, New York before they were interdicted by the OSP Troopers.  According to the exigent ping data on HEARN's telephone number, he never left Columbus, Ohio, on April 26, 2018.

**D.  Based on the Above, Law Enforcement Obtains and Executes a Search Warrant for a Residence in Lewiston, New York, in the Western District of New York.**

27.    At the traffic stop on April 26, 2018, DELORENZO was provided with SA Petit's phone number. On April 27, 2018, ATF SA Petit missed two (2) incoming telephone calls from the phone number of (716) 545-0776, the number associated with DELORENZO. A check in law enforcement databases identified the telephone number as belonging to DELORENZO at the address of 130 N. 8th Street, Lewiston, New York 14092.  Also on April 27, 2018, ATF SA Petit determined through further investigation that J. WATKINS was last known to be living with DELORENZO in Lewiston, New York, at that address.  A review of social media displays that J. WATKINS and DELORENZO have been associated together as far back October of 2015.

14

28.     On April 28, 2018, law enforcement obtained a Federal search warrant in the

Western District of New York.  The warrant was signed by the Honorable Jeremiah J.

McCarthey, United States Magistrate Judge for the Western District of New York.  The

warrant was executed at the location of 130 N. 8th Street, Lewiston, New York 14092.  At

the execution of the search warrant, investigators made contact with both J. WATKINS and

DELORENZO who were present upon entering the residence.  Investigators recovered a box

of ammunition matching the manufacturer and caliber type ammunition to that which was

recovered loaded in one of the firearms recovered in the vehicle on April 27, 2018, and other

items.


**E.  Following the searches of the Nissan Altima and the Residence in Lewiston, HEARN, J. WATKINS, GREEN, and DELORENZO Are Indicted for Illegally Transferring Firearms.**

29.     For their role in the conspiracy, HEARN, J. WATKINS, GREEN, and

DELORENZO were indicted by a Federal Grand Jury in the Southern District of Ohio on

August 30, 2018, in case number 2:18-cr-182.  The defendants were charged with a violation

of 18 U.S.C. § 371, namely: Conspiracy to Illegally Transfer Firearms in violation of 18 U.S.C

§ 922(a)(5) (Illegal Transfer to Out-of-State Resident) and 18 U.S.C. § 922(a)(6) (Making a

False Statement During Purchase of a Firearm).  The case is pending before the Honorable

Algenon L. Marbley, United States District Judge for the Southern District of Ohio.


**F.  Since the Indictment, the Investigation has Uncovered New Information Connecting Firearms Trafficking—Both Prior Firearms Trafficking and Ongoing Firearms Trafficking—to the TARGET PREMISES.**

30.     Since the indictment returned on August 30, 2018, the investigation has

15

continued, and it has uncovered the following facts that bear on the present affidavit and application for a search warrant.

31.    **J. WATKINS now resides at the TARGET PREMISES.**  He is residing at the **TARGET PREMISES** under the supervision of the pre-trial services office in the Western District of New York.

32.    **J. WATKINS' brother, M. WATKINS, also lives at the TARGET PREMISES.**

33.    **M. WATKINS was recently stopped near the U.S.–Canada border with 20 firearms in an after-market compartment in the trunk of a car.**  More specifically:

    a.    M. WATKINS has an enhanced New York driver's license that lists his residence as the **TARGET PREMISES**. The enhanced license allows him to cross into Canada.

    b.    On October 16, 2018, M. WATKINS was involved in a traffic stop in Canada, near the U.S.–Canada border.  The circumstances of the stop bear resemblance to the firearms-trafficking conspiracy for which J. WATKINS—who resides at the **TARGET PREMSIES** with M. WATKINS—has been indicted.

    c.    Specifically, on October 16, 2018, at 5:58PM, M. WATKINS was stopped by the Canada Border Services Agency ("CBSA") as he entered Canada. M. WATKINS was operating a 2017 Nissan Versa with West Virginia license plate number 2TM684.  A secondary search of the vehicle recovered twenty (20) firearms.   CBSA identified an after-market constructed compartment in the trunk of the vehicle that concealed the firearms.  During the encounter with M. WATKINS, he provided his home address as 1707 Ferry Avenue, Niagara Falls, New York 14301 (the **TARGET PREMISES**).  The address of the **TARGET PREMISES** is also the listed address on the enhanced New York State driver's license

M. WATKINS provided to CBSA as identification. M. WATKINS stated he had been living between both West Virginia and Niagara Falls, New York, and specifically living at the **TARGET PREMISES** during his time in New York.

d.  Prior to being stopped at 5:58PM on October 16, 2018, the vehicle in which M. WATKINS was later stopped by CBSA (the Nissan Versa with West Virginia plate number 2TM684) was identified at 12:20PM the same day via an automated license plate reader ("ALPR"). Based on the circumstances noted herein, law enforcement suspects M. WATKINS was driving the vehicle. The ALPR identified the Nissan Versa at 12:20PM on October 16, 2018, traveling toward the Niagara Falls area on Interstate 90 in Chautauqua County, New York. The location of the ALPR hit is approximately one hour and twenty-four minutes (1:24) from the **TARGET PREMISES.** Based on the travel time and the arrest time noted above, there are nearly four hours unaccounted for between M. WATKINS' arrival in the Niagara Falls area and when he was stopped by CBSA 10 minutes away at the Canadian border. During that time, M. WATKINS would have had adequate time to stop at the **TARGET PREMISES**, which, according to his enhanced New York license and his statement to Canadian authorities, was his place of residence. The **TARGET PREMISES** are approximately ten minutes (10) from the border crossing where he was stopped and the firearms were interdicted by CBSA.

34.  The investigation has further linked M. WATKINS, who resides at the **TARGET PREMISES**, to conduct indicative of firearms trafficking, and to conduct similar to the conduct uncovered to date as part of the already-indicted firearms-trafficking conspiracy.

a.  Investigators have reviewed the United States and Canada border crossing history for M. WATKINS. It was identified that M. WATKINS crossed multiple times throughout the investigation, and often did so after documented purchases of firearms by HEARN.

b.  Additionally, he crossed on August 30, 2018, just two (2) days after R. WATKINS, whose apparent connection to the scheme is explained below, conducted a firearm purchase. Moreover, during the investigation your affiant learned that the conspirators would purchase firearms and transport them into the Niagara Falls region for smuggling within several days of their purchase.

35.    **The investigation has also linked R. WATKINS—whose vehicle M. WATKINS was driving when pulled over with 20 firearms in the trunk on October 16, 2018—to trafficking scheme.**

a.    Based on the investigation, law enforcement has determined that J. WATKINS, M. WATKINS, and HEARN are brothers, and R. WATKINS is a cousin of all three.

b.    The Nissan Versa M. WATKINS was driving when he was pulled over on October 16, 2018, had a West Virginia license plate number 2TM684. This vehicle has been determined to be registered to R. WATKINS of 160 Mountaineer Lane, Bluefield, West Virginia 24701.

c.    The investigation has demonstrated that two of the 20 firearms seized on October 16 were stolen. One of those firearms was determined to be stolen from the area of Bluefield, West Virginia, where R. WATKINS resides.

d.    Though he has not yet been indicted, R. WATKINS had previously been implicated in the firearms conspiracy. On April 13, 2018, in Ottawa, Ontario, Canada, investigators recovered a Smith and Wesson, model SD9VE, 9mm caliber, semi-automatic firearm, with serial number FYV4793 (ATF trace number T20180138168). A trace of the firearm revealed that the original purchaser was R. WATKINS. R. WATKINS purchased the firearm from a FFL in Bluefield, West Virginia, and the time-to-crime calculation was 248 days. A 248 day time-to-crime calculation is low in relation to the national average and an indicator of a firearm that was criminally resold or diverted. The aforementioned firearm was also recovered in a related incident with two other firearms that had been purchased by HEARN that were implicated in the indictment of J. WATKINS and HEARN (aforementioned trace numbers T20180137995 and T20180138490). Your affiant knows from training and experience that firearms trafficked as part of the same scheme usually are diverted to the same source the three (3) firearms having been recovered in related incidents is an indicator that they were provided by the same source to the end user in Canada.

e.    In addition, while reviewing a forensic image obtained via Federal search warrant of a cellular telephone belonging to J. WATKINS, ATF SA Petit located a WhatsApp conversation between J. WATKINS and, as the name appears in the phone, "Rashan Watkins." The profile name of "Rashan Watkins" was linked to telephone number (304) 888-9982. That telephone number has been linked to a Facebook profile for Rashaun

WATKINS. The two exchanged multiple messages discussing pricing for illicit narcotics. In the context of one of those messages, J. WATKINS and R. WATKINS discussed exchanging guns for drugs, with J. WATKINS saying to R. WATKINS, "I'll would even prefer to trade you trade you [drugs] for the gats." Your affiant knows from experience the term "gats" is a common reference to guns/firearms.

36. **In addition to M. WATKINS engaging in conduct consistent with firearms trafficking while residing at the same address as J. WATKINS, the investigation has identified additional information relevant to the TARGET PREMISES and firearms trafficking.** To wit:

a. Your affiant learned through the investigation that the street value of each illegally trafficked firearm into Canada is between $3,000 and $5,000 U.S. dollars. Applied to M. WATKINS' most recent stop by CBSA, the street value of the 20 firearms uncovered is between $60,000 and $100,000 U.S. dollars.

b. As stated in the indictment returned in the Southern District of Ohio on August 30, 2018, the conspiracy at issue has involved at least 38 additional firearms. Based on the investigation, those 38 firearms have a street value in Canada of between $114,000 U.S. dollars and $190,000 U.S. dollars.

c. According to a confidential source ("CS") with knowledge of the scheme, J. WATKINS has, within the past year, kept large quantities of U.S. cash currency at the **TARGET PREMISES**. Specifically, based on the CS's direct knowledge, J. WATKINS has previously delivered to the **TARGET PREMISES** multiple shoeboxes filled with cash proceeds from the firearms-trafficking scheme to be kept at the **TARGET PREMISES**. CS has provided other information relevant to the investigation that law enforcement has been able to corroborate. For example, the CS has provided names and other identifying information regarding unindicted coconspirators, including location of residences, citizenship status and other familial relationships that further identify the unindicted coconspirators. In addition, the CS informed law enforcement about travel details associated with the firearms trafficking conspiracy, such as dates of travel from New York to Ohio and corresponding hotel information regarding such trips. Law enforcement has been able independently to corroborate such information. As an additional example, the CS identified financial transactions relevant to the scheme

that were verified by law enforcement.

d.   Such conduct accords with your affiant's training and experience, which is that firearms traffickers will keep cash proceeds from the trafficking scheme at their residence(s) to limit law enforcement detection.

e.   The investigation has demonstrated that cash was provided to HEARN by J. WATKINS for the purchase of 36 of the 38 firearms included in the August 30 indictment of J. WATKINS and his co-defendants. Also relevant to the above, despite numerous subpoenas and an ongoing investigation, law enforcement has been unable to identify any official banking records or banking sources for J. WATKINS.

f.   Moreover, the previous search of the residence in Lewiston did not uncover any cash proceeds from the scheme.

g.   During the course of the investigation, law enforcement has confirmed that J. WATKINS has directed the activity of the purchasers and transport of the firearms. Further, J. WATKINS was the conduit to the end users of the illegally purchased and illegally transferred firearms in Canada.

37.   Your affiant knows through training and experience that a person who purchases firearms, or directs the purchase of firearms as part of a firearms-trafficking operation, may store those items, as well as documents related to the acquisition of the firearms, proceeds, ledgers, receipts, contact information, or other related material at any associated residence, garage, out building, storage unit, and vehicle(s). Based on training and experience, and based on the above information, it is probable that the **TARGET PREMISES** will contain evidence that will aid in developing further evidence of the conspirators' firearm-trafficking activities, including evidence further establishing a pattern of HEARN, J. WATKINS, GREEN, DELORENZO, M. WATKINS, R. WATKINS, and others unknown in their firearms-trafficking activities.

## CONCLUSION

38.     Based on the information set forth in this affidavit, I submit there is probable cause to believe that the individuals identified as Jeremy L. HEARN, Jerome I. WATKINS, Marcedes L. GREEN, Kristina E. DELORENZO, Marquise T. WATKINS, Rashaun D. WATKINS, and others have violated Title 18, United States Code § 922(a)(6), making false statements in connection with the acquisition of firearms, and Title 18, United States Code § 371, conspiring to violate the law of the United States. Your affiant further submits there is probable cause to believe that, pursuant to the information set forth in this affidavit and that set forth in Attachments A and B, the **TARGET PREMISES** located at 1707 Ferry Avenue, Niagara Falls, New York 14301, contains evidence and instrumentalities of violations of federal law, including Title 18, United States Code § 922(a)(6), and Title 18, United States Code § 371, namely: evidence of a crime; contraband, fruits of a crime, or other items illegally possessed, as well as property and materials designed for use, intended for use, or used in committing violations of those statutes.


39.     Accordingly, your affiant respectfully requests that this Court issue a warrant authorizing the search of the **TARGET PREMISES** located at 1707 Ferry Avenue, Niagara Falls, New York 14301, as described in Attachment A, and authorizing a search for and seizure of the items described in Attachment B hereto, incorporated herein by reference.


40.     Your affiant further requests that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. Your affiant believes that sealing this document is necessary

because the items and information to be seized are relevant to an ongoing investigation into criminal activity, the entire extent of which is not known at this time.  Based upon my training and experience, and information I have received from ATF and other law enforcement agents, your affiant knows that criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other criminals as they deem appropriate, e.g., post them publicly online through different forums.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

PAUL BROSTKO, Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn and subscribed to me this
19th day of October 2018.

HON. JEREMIAH J. McCARTHY
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is a located at 1707 Ferry Avenue, Niagara Falls, New York 14301. The single family, one-story residence appears as red brick color with beige trim. The numbers "1707" are affixed to the left front pillar of the residence. There is a detached garage in the rear left corner of the property. A chain-link fence surrounds the property. This warrant authorizes the search of the residence and all outbuildings located on the property for evidence of Making a False Statement During the Purchase of Firearms in violation of 18 U.S.C. § 922(a)(6) and Conspiracy to Commit an Offense in violation of 18 U.S.C. § 371.

## ATTACHMENT B

Your affiant has probable cause to believe that all items contained in the property described in Attachment A relate to violations of 18 U.S.C. § 922(a)(6) (Making a False Statement During the Purchase of Firearms) and 18 U.S.C. § 371 (Conspiracy to Commit an Offense), including, but not limited to:

(a)    Ammunition and firearms such as pistols, revolvers, or those items similar in type to the recovered firearms and or records of firearms purchased on or before November 2017 through current date, as defined by 18 USC § 921;

(b)    Any and all documents, records, boxes or indicia related to the purchase, sale, transfer or transportation of firearms and/or ammunition;

(c)    Log books, records, payment receipts, notes, and/or computer lists, ledgers, sales tags and other papers relating to the purchasing, ordering, processing, storage, and distribution of firearms including all records of income and expenses;

(d)    Electronic equipment, such as pagers, telephone answering machines, telephone caller identification boxes, video and audiocassette tapes, fax machines, electronic media (computers, floppy disk, disks etc.), and any stored electronic data and/or communications contained therein directly related to the violations of the aforementioned statutes;

(e)    Cellular telephone(s) and/or portable cellular telephone(s) and any stored electronic data and/or communications contained therein directly related to the violations of the aforementioned statutes;

(f)    Indicia of occupancy, residency, rental and/or ownership of the premises described above, or vehicles located thereon, including but not limited to utility and telephone bills, cancelled envelopes, keys, deeds, purchase lease agreements, land contracts, titles and vehicle registrations;

(g)    The opening, search and removal, if necessary, of any safe or locked receptacle or compartment, as some or all of the property heretofore may be maintained and

(h)     Cash, currency, currency counters, financial instruments, and records relating to firearm trafficking income and expenditure of proceeds of firearm transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in firearm trafficking activities;

(i)     Any other items which constitute evidence of crimes of 18 U.S.C. § 922(a)(6), Making a False Statement During the Purchase of Firearms, and 18 U.S.C. § 371, Conspiracy to Commit an Offense.